RONALD D. ARENA, Bar No. 218421
CONOR D. MACK, Bar No. 253878
ARENA HOFFMAN LLP
220 Montgomery Street, Suite 905
San Francisco, CA 94104
Telephone: 415.433.1414
Facsimile: 415.520.0446
Email:  rarena@arenahoffman.com
        cmack@arenahoffman.com

Attorneys for Defendant
SUNRUN INC.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL T. DORIA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN INC.,<br><br>Defendant. | Case No. CV-19-05643-PHX-DJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR RECONSIDERATION** |

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR
PRELIMINARY INJUNCTION

Case No. CV-19-05643-PHX-DJH

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Sunrun Inc. ("Sunrun" or "Defendant") hereby opposes the motion of Plaintiff Daniel Doria ("Doria" or "Plaintiff") for a preliminary injunction seeking to restrict Defendant's otherwise lawful speech (the "Motion"). The Motion is not supported by any evidence showing the likelihood of immediate and irreparable injury, loss, or damage. On that basis alone, it must be denied. Furthermore, Plaintiff has not established a likelihood of success on the merits of his claims. The order Plaintiff seeks is an unconstitutional prior restraint on speech. Even if constitutional, Motions seeking to restrain speech, such as here, require a heightened showing of a likelihood of success on the merits. Doria cannot make such a showing, as his claims will necessarily fail. He does not bring a claim for defamation. His contractual concerns are moot due to his termination. There is no risk of disclosure of confidential medical information. Accordingly, Doria's Motion must be denied in full. If the Court is inclined to issue the requested order, which it should not, a bond should be required in an amount sufficient to pay Defendant's costs and damages, including Defendant's likely attorneys' fees on appeal.

## II. PROCEDURAL HISTORY

Doria filed this action on November 18, 2019 along with an *ex parte* application for a temporary restraining order. (Dkt. 1, 2) On November 19, 2019, the Court denied the *ex parte* application on the basis that Doria had not shown that he would suffer irreparable injury before Defendant could be heard in opposition and converted the application into a motion for preliminary injunction. (Dkt. 12)

On November 25, 2019, Doria filed a motion to reconsider the denial of the *ex parte* application, admitting that he no longer sought as much relief as he had initially (a "majority of the terms originally proposed for protection . . . are no longer relevant.") (Dkt. 14, 15) On December 13, 2019, the Court denied the motion to reconsider. (Dkt. 24)

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION 1. Case No. CV-19-05643-PHX-DJH

On January 6, 2020, Sunrun executed a waiver of service of summons, triggering the deadline to file the instant Opposition.

### III. STATEMENT OF FACTS

Plaintiff was hired by Sunrun as a Inside Sales Consultant on April 26, 2016. (Donoho Decl., Exh. A) During the interview process, Doria was informed that the position was located in Scottsdale, Arizona and that Sunrun would not pay for Doria's relocation expenses. Doria accepted the position, underwent training and began working without incident. His immediate supervisor, Brian Donoho, did not make any misrepresentations to Doria about his compensation or Sunrun's business practices. (Donoho Decl. at ¶ 3) Although Doria was professional and courteous at times, it was not long before he began engaging in hostile, belittling, threatening and abusive communications with his colleagues, superiors, and members of Sunrun's Human Resources "Talent team." (Lessard Decl. at ¶ 4)

Doria requested and was granted an accommodation that allowed him to work remotely. (Donoho Decl. at ¶ 4) The details of his accommodation were shared with supervisors and members of the Talent team only as necessary. (Young Decl. at ¶ 4) No confidential medical information was shared. (Young Decl. at ¶ 4)

Despite his accommodation, Doria failed to meet the performance and sales metrics required by his variable compensation plan. The minimum monthly expectation for Doria's position was six (6) completed sales. (Donoho Decl. at ¶ 5) During the month of September, 2019, Doria did not complete a single sale. (Donoho Decl. at ¶ 5) On September 30, 2019, Mr. Donoho wrote to Doria to encourage him to "step up" to get the job done and offered his help. (Donoho Decl. at ¶ 4, Exh. B) Mr. Donoho offered to provide Doria with whatever he needed, so long as Doria asked for help. (Donoho Decl. at ¶ 4, Exh. B) Mr. Donoho suggested examples of ways he might be able to help Doria, including listening in to more of Doria's calls or having Doria come into the office, which Doria had previously agreed to do as needed. (Donoho Decl. at ¶¶ 4, 5, Exh. B) In no way did Mr. Donoho tell Doria that he was

not allowed to work remotely. (Donoho Decl. at ¶¶ 4, 5, Exh. B) Mr. Donoho did suggest, however, that Doria would be put on a performance improvement plan if his sales numbers did not improve. (Donoho Decl. at ¶ 4, Exh. B)

Almost immediately after Mr. Donoho criticized Doria's lack of sales and suggested placing him on a performance improvement plan, Doria began making false accusations and complaints to human resources regarding Mr. Donoho and other employees. (Lessard Decl. at ¶ 3) Indeed, Doria made so many complaints about so many different people, that the initial human resources employee assigned to investigate them had to escalate the complaints to someone else to manage the investigation. (Young Decl. at ¶ 2) Ms. Young, who took over the investigation spoke to Doria multiple times regarding his variety of complaints to ensure that she had a complete and thorough understanding of them. (Young Decl. at ¶ 3) She reviewed the initial investigation files and conducted her own thorough investigation. (Young Decl. at ¶ 3) Despite Ms. Young's comprehensive investigation, she was unable to corroborate Doria's claims or find that any of the things he complained of amounted to a violation of Sunrun policy. (Young Decl. at ¶ 3) In reality, Ms. Young's investigation revealed that Doria's complaints were "intentionally false, misleading, distorted, and exaggerated". (Young Decl. at ¶ 3) Furthermore, Doria's behavior and threats were creating a toxic working environment and threatening productivity. (Young Decl. at ¶ 3) Doria's colleagues were afraid of communicating with him out of a fear that he would misconstrue their communications and make false accusations about them. (Young Decl. at ¶ 3; Lessard Decl. at ¶ 3) The investigation determined "that Doria was manufacturing false, exaggerated, and distorted complaints that were made for the purpose of harassing, intimidating, and bullying Sunrun employees." (Young Decl. at ¶ 3)

During this same time period, Doria failed to finalize a solar installation project, necessitating Mr. Donoho's involvement. (Donoho Decl. at ¶ 6) Doria became upset and requested to human resources and Mr. Donoho that Mr. Donoho "cease all

abusive and harassing communications". (Donoho Decl. at ¶ 6, Exh. C) Because by this time Doria construed all of Mr. Donoho's communications as abusive and harassing, Mr. Donoho had no recourse but to cease communications altogether, including by removing Doria from a Google Chatroom Donoho used to communicate with Doria and others. (Donoho Decl. at ¶ 6; Lessard Decl. at ¶ 3) Doria remained free to communicate with other team members, who were also submitting complaints about Doria's threatening, intimidating, harassing and bullying comments. (Donoho Decl. at ¶ 6; Young Decl. at ¶ 3)

Accordingly, by October 2019 Doria was failing to meet his performance goals, making false complaints, and harassing and bullying his coworkers. Management and HR considered putting Doria on a performance improvement plan, but feared it would only incite further intimidating and hostile behavior. (Lessard Decl. at ¶ 4) Accordingly, Sunrun decided to part ways with Doria. (Lessard Decl. at ¶ 4) Because Doria had previously requested a severance package, Sunrun decided that was the best course of action to remove Doria. (Lessard Decl. at ¶ 4, Exh. A)

Jessica O'Quin, Senior Director, Talent, Business Partner for Sunrun took charge of the severance negotiations because she had not been directly involved with Doria prior to that time. (O'Quin Decl. at ¶ 2) In fact, she had never met him or spoken with him. (O'Quin Decl. at ¶ 8) They worked in different business units and lived in different states. (O'Quin Decl. at ¶ 8) Ms. O'Quin prepared an outline of matters she wished to discuss with Doria, and later summarized her call with him below the outline. (O'Quin Decl. at ¶ 3, Exh. A)

Needless to say, the conversation did not go well. (O'Quin Decl. at ¶¶ 4-8, Exh. A) Doria rejected the offer and became irate in tone and language. (O'Quin Decl. at ¶¶ 5-6, Exh. A) He threatened that Sunrun would learn the hard way and doubled his settlement offer. (O'Quin Decl. at ¶¶ 4-8, Exh. A) Ms. O'Quin rejected Doria's demand and told him he could remain in his current role, but would be subject to the same expectations as all other employees. (O'Quin Decl. at ¶ 6, Exh. A) Doria

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

apparently interpreted Ms. O'Quin's statement to suggest he would be put on a performance improvement plan and, before hanging up, said "Jessica, you have a beautiful family." (O'Quin Decl. at ¶ 7, Exh. A) Given the fact that Ms. O'Quin had never met or spoken with Doria, his out of context statement regarding her family shocked her. (O'Quin Decl. at ¶ 8) There is no information about her family on the Sunrun website or available on Facebook. (O'Quin Decl. at ¶ 8) Ms. O'Quin interpreted the comment as a threat and was scared and intimidated. (O'Quin Decl. at ¶ 8) She reported the conversation. (O'Quin Decl. at ¶ 8)

After Doria threatened Ms. O'Quin, he mischaracterized the conversation and accused her of threatening him. (Lessard Decl. at ¶ 6) Given Doria's threat, his ongoing bullying, false accusations and failure to improve his performance or behavior, and Sunrun's fear of what Doria might do next, Senior Manager, Talent Business Partner Megan Lessard decided to terminate Doria's employment. (Lessard Decl. at ¶¶ 6-7) The decision was made for business reasons prior to Doria's filing of the instant lawsuit. (Lessard Decl. at ¶ 7, Exh. B; O'Quin Decl. at ¶ 9) Neither Mr. Donoho nor any other member of management has made defamatory statements about Doria. (Donoho Decl. at ¶ 7)

## IV. LAW AND ARGUMENT

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F. 3d 1109, 1127 (9th Cir. 2009). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Hunt v. National Broadcasting Co.,* 872 F.2d 289, 293 (9th Cir.1989) (quoting *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987).

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION      5.      Case No. CV-19-05643-PHX-DJH

> Accordingly, although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met. Conversely, if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that plaintiff is likely to prevail on the merits is particularly important.

11 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.). Here, Defendant will be prejudiced by the relief sought while Doria's Motion is unsupported by any facts showing irreparable harm and does not establish a likelihood of success on the merits. It must be denied.

### A. An Injunction Cannot Issue In The Absence Of Specific Facts Showing Irreparable Harm

Doria's Motion is "based on the Complaint in this action, the concurrently filed Memorandum of Points and Authorities, Propose [sic] Order and Declaration of Daniel Doria." (Dkt. 2 at 6) Although Doria submits a declaration, it does not contain specific facts showing an immediate and irreparable injury. As such, the Motion does not comply with Federal Rule of Civil Procedure 65 and must be denied.

Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 22, 129 S.Ct. 365, 375 (2008); *see also, Freedom Holdings, Inc. v. Spitzer*, 408 F. 3d 112, 114 (2nd Cir. 2005) – irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction"; *Apple, Inc. v. Samsung Electronics Co., Ltd.* 678 F. 3d 1314, 1325 (Fed. Cir. 2012) – movant must make "clear showing" of likelihood of irreparable harm.

Under Federal Rule of Civil Procedure 65, a district court may issue an injunctive relief "only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

movant." Fed. R. Civ. P. 65(b). Here, Doria's declaration does not present specific facts showing immediate and irreparable injury, loss, or damage. Indeed, Doria concedes that the conduct he initially allegedly sought to prevent has already occurred. (Dkt. 14 at 1-2) Accordingly, the Motion must be denied.

Doria's Complaint is not verified. An unverified complaint is not evidence. *Sampson v. Murray*, 415 U.S. 61, 88, 94 S. Ct. 937, 952, 39 L. Ed. 2d 166 (1974); *Coverdell v. Department of Social and Health Services, State of Wash.*, 834 F.2d 758, 762 (9th Cir. 1987). Doria's declaration, on the other hand is evidence. What is not, however, is evidence of a likelihood of irreparable harm to Doria. The declaration deals entirely with events that have already allegedly occurred. (Dkt. 4) Furthermore, most of the allegations upon which Doria bases his Motion have been refuted. (*See, e.g.*, Donoho Decl. at ¶¶ 3-7) He was also given assurances that Sunrun would investigate matters brought to their attention by employees. (O'Quin Decl. at ¶ 5) Finally, and most importantly, as Doria acknowledges, he no longer works at Sunrun, so even if he feared these past events recurring at the time he signed the declaration, that fear has been alleviated by his termination. The requested relief is therefore moot. *See*, *e.g.*, *Tate v. Univ. Med. Ctr. of S. Nevada*, 606 F.3d 631, 634 (9th Cir. 2010).

Here, Doria has provided no evidence of immediate and irreparable injury, loss, or damage. On this basis alone, the Motion must be denied.

### B. Doria Seeks An Unconstitutional Restraint On Defendant's Speech

Doria requests a preliminary injunction restraining and enjoining Defendant and its employees from making allegedly false statements about him and from providing government agencies and potential employers the reason for his termination. (Dkt. 14 at 3-4) Such an order would constitute an unconstitutional prior restraint on Defendant's speech.

Prior restraints are disfavored and presumptively invalid. Circumstances more urgent than these have been adjudged insufficient to justify the imposition of a prior

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION     7.     Case No. CV-19-05643-PHX-DJH

restraint. Even the publication of the purloined Pentagon Papers concerning matters of national security could not be restrained. *New York Times Co. v. U.S.* (1971) 403 U.S. 713, 714, 29 L.Ed.2d 822. There, despite the urging of the government that the publication would result in a serious breach of national security, the Supreme Court upheld the decision declining to restrain the Papers' publication. *Id*.

In addition, prior restraints are not permitted to stop the publication of a defamatory statement. The Supreme Court has summarized its First Amendment jurisprudence in this area as follows:

> The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.
>
> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 49 L.Ed.2d 683 (1976). Accordingly, "[t]he usual rule is 'that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'" *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987). Mr. Donoho denies spreading any false and defamatory statements about Doria. (Donoho Decl. at ¶ 7) Restraining his speech by way of injunction, rather than damages after a trial should Doria prevail, is not a remedy available to Doria.

Here, the order sought by Doria constitutes an unconstitutional prior restraint on Plaintiff's speech. The unconstitutionality of such an injunction necessarily results in

irreparable harm to the party to be restrained. *Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994). As such, the Motion must be denied.

### C. Doria's Desired Injunction Is Disfavored And Requires A Heightened Showing Of Likelihood Of Success On The Merits

A preliminary injunction can only be employed for the "limited purpose" of maintaining the *status quo*. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *King v. Saddleback Junior College District*, 425 F.2d 426, 427 (9th Cir. 1970).

Here, Doria seeks to disturb, rather than preserve, the *status quo*. Such requests are particularly disfavored and must be closely scrutinized by the Court. "It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963). Doria's proposed injunction does just that.

Although mandatory and prohibitory injunctions are both governed by the same criteria, courts are generally more cautious about issuing mandatory preliminary injunctions that would alter the *status quo* by commanding some positive act. Such relief is "subject to heightened scrutiny and should not be issued unless the facts and law *clearly favor the moving party*." *Dahl v. HEM Pharmaceuticals Corp.,* 7 F. 3d 1399, 1403 (9th Cir. 1993) (emphasis added); *Garcia v. Google, Inc*., 786 F. 3d 733, 740 (9th Cir. 2015)—plaintiff's burden is "doubly demanding" if seeking a mandatory injunction.

Mandatory injunctive relief is "particularly disfavored" and will not be granted unless *extreme or very serious harm* will result, not capable of compensation in

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION    9.    Case No. CV-19-05643-PHX-DJH

1 damages, if the injunction is not issued. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873, 879 (9th Cir. 2009). Here, Doria has not introduced *any* facts showing any likelihood of harm in the absence of the requested mandatory injunction. Doria cannot make the heightened showing required for the relief requested.

### D. Doria Did Not And Cannot Establish A Likelihood Of Success On The Merits Of The Claims Underlying His Proposed Injunction

Doria's inability to demonstrate a likelihood of success on the merits of the claims underlying the Motion dooms his request for a preliminary injunction.

#### 1. Doria Does Not Assert A Claim For Defamation

Although the Motion does not specifically identify which of Doria's claims support his request for an injunction, it appears from nature of the relief requested that it is based on an unpled claim for defamation. For instance, Doria seeks an order restraining Sunrun's employees from "spreading false and defamatory statements" and from "sharing knowingly false information with government agencies or employers." (Dkt 14 at 7-8). Doria does not bring a claim for defamation, however. (Dkt 1) Accordingly, Doria cannot establish a likelihood of success on the merits. *Traeger Pellet Grills LLC v. Dansons US LLC*, 2019 WL 6492446, at *3 (D. Ariz., Dec. 3, 2019) ("Traeger Grills does not plead a claim for false endorsement as one of the thirteen counts in its complaint and has not sought to amend its complaint to add a false endorsement claim. This alone is a sufficient basis for concluding that Traeger Grills is unlikely to succeed."); *accord, Volis v. City of Los Angeles Housing Authority,* 2013 WL 12214417, at *5 (C.D. Cal., 2013) ("Because Volis does not plead discrimination on the basis of disability, or retaliation for pursuing his rights under the ADA, he has failed to demonstrate a likelihood of success on his ADA and Rehabilitation Act claims.") It is a given that Doria cannot succeed on the merits of a claim he does not even assert. The Motion must be denied.

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR
PRELIMINARY INJUNCTION

10.

Case No. CV-19-05643-PHX-DJH

### 2. The Contract Claims Cannot Support The Injunction Sought

Doria's contract claims are based on alleged misrepresentations made to him prior to and during the onset of his employment. Doria seeks to restrain Defendant from making any future misrepresentations to him and other employees or applicants and to compel Defendant to provide him and future applicants with information he believes is more accurate. To the extent that Doria's Motion is based on comments regarding *his* employment, it is moot, as he is no longer employed by Defendant. *Tate, supra,* 606 F.3d at 634. To the extent that the claims are based on comments made or to be made to *other* employees or applicants, Doria lacks standing to bring such a Motion. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 922 (D. Ariz. 2010) ("Plaintiff, as a former employee, lacks standing to seek an injunction on behalf of current employees."). Doria's contract claims therefore cannot support the relief requested by the Motion.

### 3. Doria's Disability Claims Cannot Support The Injunction

Doria complains that a member of Defendant's Talent team (*i.e.*, human resources) disclosed to a supervisor, Director, Employee Relations and Compliance, information regarding his requested accommodation. Ms. Young oversees Sunrun's accommodations. (Young Decl. at ¶ 4) Accordingly, the ADA specifically provides for the disclosure to her. 42 U.S.C. §§ 12112(d)(3)(B), (4)(C) (1994); 29 C.F.R. § 1630.14(b)(1) (1998). Doria does not allege that Defendant has or is likely to disclose the details of his previous accommodation to anyone else. As shown above, he does not have standing to address his fear of disclosure of other employees' confidential information being released. As far as he requests an injunction based on any future disclosure of his accommodation, he cannot prevail on the merits because the only disclosure made was explicitly authorized by statute. Accordingly, because there is no likelihood of success, Doria's disability claims do not support the injunction sought.

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION 11. Case No. CV-19-05643-PHX-DJH

### E. The Balance Of The Hardships Warrants Denial Of The Motion

As shown above, Doria is unlikely to prevail on any of his claims. He lacks standing to seek an injunction regarding other employees or applicants. The other relief sought by the Motion is moot because he is no longer employed. Furthermore, as established above, an unconstitutional restraint on speech necessarily results in irreparable harm. It is unlikely that the injunction sought would assuage any of Doria's concerns. As such, the balance of the hardships clearly favors denial of the Motion.

### F. The Requested Injunction Is Inequitable

Doria seeks to enjoin the otherwise lawful speech of Mr. Donoho as well as additional, unnamed Sunrun employees over whom the Court has no jurisdiction. This he may not do.

To restrain the speech of Sunrun's employees would be inequitable. As the Supreme Court has noted:

> prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.
>
> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

*Nebraska Press Ass'n*, *supra*, 427 U.S. at 559. Here, Doria seeks to enjoin the speech of an untold number of people in a variety of jurisdictions without a shred evidence of any wrongdoing. The Court must not countenance such an inequitable result.

Compounding the inequities, Doria's proposed injunction would be difficult, if not impossible, for Sunrun, much less the Court, to enforce. Such unwieldy injunctions are routinely denied by the courts. *McRae v. Lois Grunow Mem'l Clinic*,

40 Ariz. 496, 507–08 (1932); *LaFaro v. Cahill*, 203 Ariz. 482, 488 (Ct. App. 2002). Sunrun cannot be expected to monitor and control each of its employees' (in 23 states, the District of Columbia and Puerto Rico) statements at all times. Furthermore, Doria has not presented any evidence of false statements. The proposed injunction is inequitable and must not be issued because it cannot be enforced.

The final inequity stems from the fact that the proposed injunction is impermissibly vague. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 156, 31 L. Ed. 2d 110 (1972) (statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" is unconstitutionally vague); *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 19 L. Ed. 2d 236 (1967); *Trans Union Credit Info. Co. v. Associated Credit Servs., Inc.*, 805 F.2d 188, 194 (6th Cir. 1986); *see also West Valley View, Inc. v. Maricopa Cnty. Sheriffs Office,* 216 Ariz. 225, 228 (App.2007) (observing that "courts are generally hesitant to order a defendant to obey a law in the future").

The balance of the equities overwhelmingly tilts against issuance of the preliminary injunction.

**G.      The Public Interest Warrants Denial Of The Preliminary Injunction**

As noted above, Doria seeks to enjoin the otherwise lawful speech of Defendant's employees. Such an order is decidedly contrary to the public interest.

Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles. *See Homans v. Albuquerque*, 264 F. 3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F. 3d 963, 970 (8th Cir. 1999) (finding a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms");

*Suster v. Marshall*, 149 F. 3d 523, 530 (6th Cir. 1998) (holding candidates for judicial office were entitled to preliminary injunction of expenditure limit given likelihood of success on the merits, irreparable harm and lack of public interest in enforcing a law that curtailed political speech); *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F. 3d 1343, 1347 (10th Cir. 1997) (stating, in context of a request for injunctive relief, that "[t]he public interest ... favors plaintiffs' assertion of their First Amendment rights"); *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F. 3d 1071, 1079 (6th Cir. 1994) (noting "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding the "strong public interest in protecting First Amendment values" favored preliminary injunctive relief).

Given the overwhelming public interest in free speech, the Application for preliminary injunction must be denied.

### H. Doria Must Pay A Bond If The Court Issues An Injunction

Federal Rule of Civil Procedure, Rule 65 provides: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Requiring a bond ensures that "defendants will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1037 (9th Cir. 1994) (upholding execution of $15,000 bond). Therefore, in fixing the amount of the bond required, the Court must consider the costs associated with dissolving the injunction, including Defendant's attorneys' fees on appeal.

"The instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F2d 100, 103 (3rd Cir. 1988); *Habitat Ed. Ctr. v. United States Forest Service*, 607 F3d 453, 457 (7th Cir. 2010) (nonprofit organizations not exempt from

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR
PRELIMINARY INJUNCTION
14.
Case No. CV-19-05643-PHX-DJH

bond requirement); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F3d 411, 421 (4th Cir. 1999) (failure to require bond upon issuing preliminary injunction is reversible error) Therefore, if the Court issues a preliminary injunction, Doria must pay a bond.

This District has recently found bonds ranging from $50,000 to over $2,000,000 to be reasonable. *See*, *e.g.*, *Alday v. Raytheon Co.*, 2008 WL 11441996, at *4 (D. Ariz. 2008); *Carmichael Real Estate, LLC v. First Citizens Bank & Tr. Co.*, 2013 WL 12114071, at *5 (D. Ariz. 2013) Given the costs and fees associated with an appeal of an improperly issued injunction, a bond in the amount of $25,000 would be eminently reasonable.

## V. CONCLUSION

Doria seeks an injunction without any evidence of the possibility of irreparable harm or the likelihood of success on the merits of his proposed claims. Upon examination, Doria's claims lack merit and he will not succeed. Therefore, the Court should deny Doria's motion for a preliminary injunction.

Dated: January 21, 2020

*/s/ Ronald D. Arena*
RONALD D. ARENA
CONOR D. MACK
ARENA HOFFMAN LLP
Attorneys for Defendant
SUNRUN INC.

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

MPA IN OPPO. TO MOTION FOR PRELIMINARY INJUNCTION

15.

Case No. CV-19-05643-PHX-DJH