RONALD D. ARENA, Bar No. 218421
CONOR D. MACK, Bar No. 253878
ARENA HOFFMAN LLP
220 Montgomery Street, Suite 905
San Francisco, CA 94104
Telephone: 415.433.1414
Facsimile: 415.520.0446
Email: rarena@arenahoffman.com
cmack@arenahoffman.com

Attorneys for Defendant
SUNRUN INC.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL T. DORIA, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUNRUN INC.,<br><br>　　　　Defendant. | Case No. CV-19-05643-PHX-DJH<br><br>**DECLARATION OF MEGAN LESSARD IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND MOTION FOR RECONSIDERATION** |

DocuSign Envelope ID: 624D4CF1-36A1-497A-BDA2-4982A8ADE76C

I, Megan Lessard, declare and state as follows:

1. I am Senior Manager, Talent Business Partner for Sunrun Corporation ("Sunrun" or the "Company") and make this declaration in opposition to the Motions of Plaintiff DANIEL DORIA ("Plaintiff" or "Doria") for a Preliminary Injunction and for Reconsideration. This declaration is based upon my own personal knowledge and my review of Company records over which I have responsibility in my capacity as Senior Manager, Talent Business Partner. If called upon to testify regarding the matters set forth herein, I could and would competently do so.

2. In Doria's motion for reconsideration, he claimed that he was terminated hours after Sunrun was notified of his lawsuit. While it is true that the notice of his termination was communicated to him on November 19, 2019 and his lawsuit was filed on November 18, 2019, the decision to terminate his employment was made before he filed the lawsuit. In fact, it appears likely that he filed the lawsuit knowing he was about to be terminated and did so in order to later claim it was retaliatory. I know of this because I was the primary decisionmaker on the decision to terminate his employment with Sunrun.

3. During Doria's brief employment with Sunrun, although he could be professional and courteous at times, he engaged in a series of hostile, belittling, threatening, and abusive communications with Sunrun personnel. He made baseless and false accusations and frequently threatened to report his colleagues to HR or file lawsuits against them for trivial, distorted, or (more often) invented slights. After his manager, Brian Donoho, sent an email to Doria on September 30, 2019 commenting on the fact that Doria had not made any sales during the month of September, and cautioning Doria that he might have to go on a performance plan, Doria's abusive, hostile, threatening, and intimidating conduct escalated. Immediately after receiving the email, he made numerous complaints to HR about various personnel that turned out to be untrue, exaggerated, or distorted. He made many people around him feel bullied, threatened, and intimidated. Colleagues were fearful of interacting with him

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

LESSARD DECLARATION     2.     Case No. CV-19-05643-PHX-DJH

1  out of fear that they would be falsely accused of things or that they would have their
2  communications distorted and taken out of context. His direct manager, Donoho, felt
3  he had to get pre-approval from HR for all of his communications with Doria because
4  Doria continued to mischaracterize and distort his manager's communications and
5  threaten his manager with reports to HR or lawsuits.

6      4.    During this time, I discussed with Doria's managers and other HR
7  personnel what could possibly be done about this untenable situation. We feared that
8  putting Doria on a performance plan would only incite him to even more hostile and
9  intimidating behavior. We finally decided that the best course was to offer him a
10 severance package. This partly stemmed from the fact that in one of Doria's emails
11 listing a number of alleged grievances, Doria himself had proposed that the Company
12 pay him a severance. A true and correct copy of that email is attached hereto as
13 Exhibit A.

14     5.    On October 30, 2019, my manager, Jessica O'Quin, met with Doria and
15 offered him a severance package. Doria, who was apparently unhappy with what was
16 being offered, became agitated during the conversation and the conversation turned
17 hostile. At the end of the October 30 call, Doria said to O'Quin, "*you have a beautiful*
18 *family*," or words to that effect. O'Quin had never before spoken with Doria, let alone
19 about her family. She had no idea how Doria knew about her family. The statement,
20 made after a tense conversation, came out of nowhere and was wholly out of context.
21 They had never spoken or met, worked and lived in different states, and worked in
22 different business units. Doria had only been employed there for a few months.

23     6.    We were concerned that Doria's comment about O'Quin's family could
24 be a veiled threat or was at least intended to scare or threaten her in some way.
25 Making matters worse, after the call, Doria then completely mischaracterized and
26 distorted O'Quin's discussion with him, claiming that O'Quin had threatened him,
27 rather than the other way around. During this time, Doria continued to lodge false and
28 baseless accusations and threaten and intimidate seemingly everyone around him.

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

LESSARD DECLARATION     3.     Case No. CV-19-05643-PHX-DJH

DocuSign Envelope ID: 624D4CF1-36A1-497A-BDA2-4982A8ADE76C

7. After O'Quin's October 30 call with O'Quin, although we certainly considered putting him on a performance plan, those of us involved in the discussions process ultimately concluded that putting Doria on a performance plan would not succeed. We were concerned that putting him on a plan would only result in a further increase in his threats, bullying, and intimidation. We also considered that he had not taken any of his managers' prior warnings about his behavior (or performance) to heart. We were also, quite frankly, concerned of what he might be capable of if we kept him employed and put him on a plan in light of his comment to O'Quin. I therefore made the decision to terminate Doria's employment, a decision that was made after the October 30 call with O'Quin and before he filed the instant lawsuit. Attached hereto as Exhibit B is a true and correct copy of the notice of termination sent to Doria.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this  1/16/2020  , at Littleton, Colorado.

*Megan Lessard*
MEGAN LESSARD

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

# EXHIBIT A



Geena Holman <geena.holman@sunrun.com>

## Concerns and Solutions
7 messages

**Daniel Doria** <daniel.doria@sunrun.com>  Mon, Sep 30, 2019 at 3:55 PM
To: Geena Holman <geena.holman@sunrun.com>

1) Through actions taken by management, trainers, operational and administrative departments, and other internal mechanisms under its control, Sunrun has willfully failed to live up to its end of the employment agreement between us.

2) Sunrun profited from misrepresentation during the time of the interview, of the generally poor condition of the company, it's inefficiencies, and inability to fulfill the most basic of project coordination and install coordination behaviors, necessary to ensure and protect the completion of projects after contract signing.

3) Sunrun misrepresented multiple facets of this role, which led me to relocate unnecessarily to Scottsdale Arizona, from Paulden, AZ, at great expense.  I could have remained in Paulden.

4) Sunrun misrepresented the call queue, and how it functions.  Specifically, Sunrun misrepresented tactical execution of self designed strategies that limit a consultant's access to leads, beyond their own sales abilities or lack thereof, not listed in Sunrun's approved disciplinary resources or published job descriptions and employment agreements.  In other words, Sunrun denied, and pretended during my interview, that they don't operate such mechanisms.  Upon arrival, I discovered they do.  This among other things, is fraud.

5) Regardless of his specific intent, Brian Donoho has attempted to leverage my medical accommodation for a second time now, as if it is something that can be leveraged for performance.  The company has a list of resources at their disposal, including termination, wherein my medical accommodation needn't be leveraged or even discussed.

6) Sunrun has misrepresented the duties of Consultant and Project Coordinator and Install Coordinator.  Sunrun tactically enforced and enforces those roles' respective duties in a fashion mechanically contrary to that described in the company's published job descriptions, and their self drafted, employment agreements.  This has also lead to the company's unjust enrichment.

7) Sunrun appears to fail to properly pay overtime, in accordance with labor regulations, as they relate to recalculated wages, associated with an individuals commission payments.

8) Sunrun provided a training class wherein, the entire class, was instructed to provide fraudulent financial information, in an attempt to secure 'deals' for Sunrun.

9) All closing calls that I have reviewed from Sunrun's top performers confirm, Sunrun's leaders of inside sales and remote, provide false, and damaging information to customers, that lead to their successful sales pipelines.  I do not do these things.

10) All of these things considered, Brian Donoho has now begun threatening my job.  I can put up with a lot, but that's when I stop having fun, illegal threats and undue fear.

This list is not exhaustive.

It is with great disappointment that I arrive at the conclusion it is time to raise concern.
I do not expect Sunrun to change how they function for me, and I see that there is some level of talent, knocking down their doors for work.  However, Sunrun brought me to Scottsdale under false pretenses, it's been downhill ever since, and I need to be made reasonably whole.

What I would propose if you or Sunrun's counsel agrees, would be a severance package, combined with a voluntary separation, and a full release of claims by both parties.

Please advise,

Daniel Doria
--

# EXHIBIT B



Daniel Doria
8776 E Shea Blvd #106
BOX 481
Scottsdale, AZ 86334

November 19, 2019

Dear Daniel,

This letter confirms that Sunrun Inc. ("Sunrun" or the "Company") is terminating your employment effective today, 11/19/2019, for repeated violations of our Employee Guidebook, including most prominently our Abusive Conduct policy, which is contained in our Employee Guidebook.  During your short time here, despite multiple warnings, you have engaged in a series of offensive, insulting, disrespectful, and insubordinate communications with your peers and managers to the point where your colleagues feel bullied, threatened, and intimidated.  You have also made entirely false and baseless accusations that appear to have been made for the purpose of belittling, threatening, and intimidating your colleagues.  You have also failed to follow instructions given to you by your managers and refused to follow Company protocols, policies, and procedures.

POLICY PROHIBITING ABUSIVE CONDUCT
All employees deserve to be treated with respect. Sunrun prohibits abusive conduct in the workplace, which can include name-calling, teasing, spreading rumors, putting down others, knowingly making false accusations and using email (company or personal), social media, or other technologies to disrupt or cause harm to others.  Abusive conduct leads to decreased morale and productivity, and will not be tolerated.  Violations of this policy may result in disciplinary action, up to and including termination.

Due to these violations of our policy, Sunrun is moving forward with termination.

**Final Pay** – You will receive all final wages owed to you including final pay, plus an amount equal to any unused accrued paid time off earned through November 19, 2019.  If you participate in a sales commission plan, we will calculate all earned commissions as of your notification date and either include with your final paycheck or as administratively possible in accordance to applicable labor laws.

**Benefits Participation** – All employee group benefits and participation will end on the last day of the month in which you terminate employment **(11/30/2019).**  Thereafter, you will have the right to continue participating in the Company's group health plans under the federal law known as "COBRA," provided that you timely elect COBRA continuation coverage and timely pay the full COBRA premium due.  Within 30 days after your Separation Date, you should receive a notice of your rights under COBRA, COBRA premium information and COBRA election form(s) which will be mailed to your home address.

**Unemployment Insurance Benefits** – You will have the right to apply for unemployment insurance ("UI") benefits.  To learn more about UI benefits, including how to apply and other displaced worker services for which you may be eligible, we recommend you visit your state's unemployment website for further information including eligibility.



**Return of Company Property Including Documents and Materials** – You are required to return all company property issued to you during your employment. If you have any property outside of the Company's offices, you will need to return that property to the Company's premises within 5 business days of your notification date. Please be advised that Sunrun considers refusal to return company property as theft and will pursue with legal action if necessary.

**Confidentiality Agreement** – In addition, you are required to continue to abide by the terms of the Company's Employee Confidentiality, Inventions Assignment and Arbitration Agreement, and to return all Company property and confidential and proprietary information by your Separation Date. This includes but is not limited to Customer, Partner, or other relevant information.

Lastly, ADP is our employee database that stores all relevant employee information including mailing address. You are required to keep this updated in order to receive company documents including your final pay. Instructions on how to access after your separation can be found in the enclosed "Exit Overview & Contact Information".

Sincerely,
Megan Lessard
Senior Manager, Talent Business Partner