DocuSign Envelope ID: FC99E657-FCD2-4AF4-BE3C-E25FE3CC6183

RONALD D. ARENA, Bar No. 218421
CONOR D. MACK, Bar No. 253878
ARENA HOFFMAN LLP
220 Montgomery Street, Suite 905
San Francisco, CA  94104
Telephone:  415.433.1414
Facsimile:   415.520.0446
Email:       rarena@arenahoffman.com
             cmack@arenahoffman.com

Attorneys for Defendant
SUNRUN INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL T. DORIA, an individual,<br><br>   Plaintiff,<br><br>  v.<br><br>SUNRUN INC.,<br><br>   Defendant. | Case No. CV-19-05643-PHX-DJH<br><br>**DECLARATION OF JESSICA O'QUIN IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND MOTION FOR RECONSIDERATION** |

O'QUIN DECL.

DocuSign Envelope ID: FC99E657-FCD2-4AF4-BE3C-E25FE3CC6183

1    I, Jessica O'Quin, declare and state as follows:

2    1.    I am Senior Director, Talent Business Partner for Sunrun Corporation
3    ("Sunrun" or the "Company") and make this declaration in opposition to the Motions
4    of Plaintiff DANIEL DORIA ("Plaintiff" or "Doria") for a Preliminary Injunction and
5    for Reconsideration.  This declaration is based upon my own personal knowledge and
6    my review of Company records over which I have responsibility in my capacity as
7    Senior Director, Talent Business Partner.  If called upon to testify regarding the
8    matters set forth herein, I could and would competently do so.

9    2.    I was not directly involved in any issues related to Doria during his
10   employment, at least not until my conversation with him on October 30, 2019.
11   Shortly before that conversation, I learned that the Company was interested in
12   exploring a resolution with him in response to his proposal for a severance package.  I
13   was asked to attempt to negotiate the severance with him because I was not directly
14   involved in any issues related to Doria and therefore had a "clean slate" with him.

15   3.    On October 30, 2019, I spoke with Doria over the phone to offer him a
16   severance package.  Attached hereto as Exhibit A is a true and correct copy of a bullet
17   point list of what I wanted to talk to Doria about, a list I drafted before our call.
18   Redacted are the settlement amounts discussed.  Immediately below the list of what I
19   wanted to discuss with him, also on Exhibit A, is a brief summary of our conversation,
20   drafted immediately after he hung up the phone on me.  My summary of the phone
21   conversation with him is true and accurate, but it is only a summary and does not
22   include all the details of the conversation or the way I felt when he, out of the blue,
23   brought up my family.

24   4.    The conversation on October 30 started with me explaining to him that I
25   understood he had some dissatisfaction with his position and that, per his request, we
26   were prepared to offer him a severance package, and I told him what that package
27   was.  He then stated that my characterization of his dissatisfaction was incorrect and
28   that he enjoyed his job at Sunrun.  He said that Sunrun completely disregards his

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

O'QUIN DECLARATION                    2.                    Case No. CV-19-05643-PHX-DJH

DocuSign Envelope ID: FC99E657-FCD2-4AF4-BE3C-E25FE3CC6183

concerns, as evidenced from the responses from Eshelle Young and now myself.  He then asked if I was able to offer him an amount that was greater than my initial offer.  I explained that I was willing to discuss something in between the number he initially demanded and the Company's counter-proposal.

5.      He then became rather irate stating "Tesla learned the hard way and now so is Sunrun."  I replied that I would not comment on any information with regards to Tesla as it is not my business.  He then said that we are wrong in our practices, to which I replied that this is his opinion and that we would continue to look into matters brought to our attention by our employees.

6.      He then became increasingly irate in his tone and language and stated that his settlement demand had now doubled.  In response, I said that I was not willing to offer that amount.  I said that he was welcome to stay in his current position at Sunrun and would be provided the same resources, tools, and expectations on processes as everyone else.

7.      He then said, "if you are going to performance manage me...." and left it at that.  I simply stated that we would be treating him the same as we do all other employees in the same role.  We then agreed that there was nothing further for us to discuss and I was about to end the call.  But before I hung up, he said, "*and Jessica, you have a beautiful family*," and hung up the phone.

8.      I was stunned.  I have a family that includes three young children.  I had never met Doria before and had never spoken with him.  We live in different states and work in different business units.  Doria had only been employed at Sunrun for a few months.  Our conversation was very tense, particularly at the end, and no part of it included any social or personal exchange.  The comment about my family was out of context and shocking to me.  On my Company profile, it says nothing about my family.  Although I have a Facebook page, my Facebook profile photograph does not include a picture of my family.  I do not even know how he could have seen my Facebook page at all, as my Facebook settings are set such that my profile does not

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

O'QUIN DECLARATION                    3.                    Case No. CV-19-05643-PHX-DJH

DocuSign Envelope ID: FC99E657-FCD2-4AF4-BE3C-E2FFE3CC6183

1   come up as part of a Google search.  I truly have no idea how Doria could have known

2   not only that I have a family, but also what my family looks like.  Clearly, he was

3   trying to send me some kind of veiled message or threat, and it really scared and

4   intimidated me.  I reported my conversation with Doria internally.

5       9.     Although I was not involved in the decision to terminate Doria's

6   employment, I was aware that the Company had reached that decision and that the

7   decision was made before he filed this lawsuit.

8       I declare under penalty of perjury under the laws of the United States that the

9   foregoing is true and correct.

10      Executed this _____1/15/2020_____, at Denver, Colorado.

11

12                                        DocuSigned by:

                                          *Jessica O'Quin*

13      JESSICA O'QUIN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENA HOFFMAN LLP
220 Montgomery Street
Suite 905
San Francisco, CA 94104
415.433.1414

O'QUIN DECLARATION                        4.                 Case No. CV-19-05643-PHX-DJH

# EXHIBIT A

- Intro

- I have received the concerns you have raised over the course of the past few weeks and we continue to look into them.

- However, it has become increasingly clear how dissatisfied with your role at Sunrun and how it interacts with other functions in the business

- Given this and per your request, I would like to discuss how we amicable separate your employment with a transition package.  This package would be contingent upon you reviewing and signing a release agreement.

  - In looking at several factors, we are willing to offer you ($4,000/month + 500 COBRA subsidy) - $4500/month

    - 3 - months $13.5k

    - 4 - month$18,000

    - 5 - months $22,500

    - 6 months - $27,000

- To have the appropriate time to consider, would you like to be placed on paid leave for the next few days.  While you contemplate you consider, would you

- He stated that my characterization of his dissatisfaction was incorrect and that he enjoyed his job at Sunrun but was clear the Sunrun completely disregards his concerns which is prevalent based on responses from Eshelle and now myself.

- He asked if I was authorized to offer him 12 months of salary and COBRA.  I stated that I was but would not be offering him that amount and would be willing to discuss something in between. He became rather irate stating 'Tesla learned the hard way and now so is Sunrun"  I replied that I would not comment on any info with regards to Tesla as it is not my business.

- He stated that we are wrong in our practices.  I responded that that is his opinion and we will continue to look into matters brought to our attention by employees.

- He became increasingly irate in his tone and verbiage and stated that his new demand was now 2 years of pay and insurance.

- I stated we were not willing to offer that amount.  He was welcome to stay in his current position at Sunrun and would be provided the same resources, tools, and expectations on processes as everyone else.

- He then said "if you are going to performance manage me...." I simply stated that we would be treating him the same as we do all other employees in the same role.

- We ended the call in that neither had any additional items to discuss.

- He wrapped up the call with, "and Jessica, you have a beautiful family" and hung up the phone.